# STATE OF MICHIGAN

# COURT OF APPEALS

In re H. C. POWELL, Minor.

UNPUBLISHED
May 9, 2017

No. 335335
Wayne Circuit Court
Family Division
LC No. 16-522447-NA

Before: TALBOT, C.J., and K. F. KELLY and BORRELLO, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating his parental rights to the minor child. Respondent's rights were terminated under MCL 712A.19b(3)(g) (failure to provide proper care or custody), and MCL 712A.19b(3)(j) (reasonable likelihood, based on conduct or capacity of parent, that child will be harmed if returned home). For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

The Department of Health and Human Services (DHHS) filed a petition to terminate respondent's parental rights after respondent allegedly sexually abused an unrelated minor victim, the daughter of his live-in partner (LTP). At the time, respondent was living apart from the minor child's mother (mother), and mother currently retains parental rights and custody of the minor child.

A pretrial hearing was held before a referee on April 8, 2016. During the hearing, the referee set the date for the combined adjudication and termination hearing for May 17, 2016. Petitioner filed a motion for a tender-years evidentiary hearing pursuant to MCR 3.972(C)(2) on July 19, 2016. Petitioner requested that the trial court hold an evidentiary hearing to determine the admissibility of statements the minor child made to Christine Brohl, a "Kids Talk" forensic interviewer, regarding respondent's sexual abuse. At an evidentiary hearing, Brohl testified about the forensic interview she conducted with the minor child wherein the minor child disclosed that respondent touched and digitally penetrated her vagina on one occasion when she was in her bedroom. Brohl testified that the minor child also stated that respondent "didn't do it," and that maybe she was dreaming. Following the hearing, the referee granted petitioner's motion, and accepted Brohl's statement in lieu of the minor child's testimony, finding that the circumstances surrounding the minor child's statements provided adequate indicia of trustworthiness.

-1-

A combined adjudication and termination hearing was held before a referee on October 4, 2016. At the outset of the hearing, petitioner's counsel stated that the parties had stipulated to incorporating Brohl's previous testimony from the evidentiary hearing into the combined adjudication and termination hearing record. The other parties did not object to the stipulation.

Corey Reed, a CPS worker, testified that he investigated the allegations made in the petition. He believed termination of respondent's parental rights were in the minor child's best interests because of the allegations that respondent sexually abused another minor. He testified that the minor child was currently placed with mother, and at the time the sexual abuse allegation was made, the minor child stayed with respondent on Tuesdays, Thursday, and on some weekends. He confirmed that he believed terminating respondent's parental rights was "a superior plan" even though the minor child was placed with mother.

Reed testified that a medical examination was conducted on the minor who was sexually abused, but that the medical examination did not reveal any signs of sexual abuse. Reed also testified that he never personally interviewed the minor. According to Reed, "Garden City" was also investigating the incident, however, Reed was unaware if any criminal charges had been filed against respondent. Additionally, Reed noted that respondent was currently living somewhere in Illinois.

The referee briefly restated the testimony of the witnesses. The referee then noted, "[t]his is a difficult case. I mean, the Court, again, had the opportunity to view the Kids Talk interview and [the sexual assault victim] went back and forth stating, you know, he touched her on her period and then that he didn't do it." She then stated, "it wasn't exactly clear as to what exactly happened." However, the referee considered "the fact that usually young children don't make up allegations like this and it would be hard to coach a child at this even if she was told to say it didn't happen, it was difficult for her to keep up with that it didn't happen because she went back and forth."

Ultimately, the referee recommended that the trial court take temporary jurisdiction over the minor child because the referee found by a preponderance of the evidence that respondent had sexually abused the unrelated minor. The referee then found, by clear and convincing evidence, that there were statutory grounds to terminate respondent's parental rights based on the fact that respondent failed to provide proper care and custody, and also that there was a reasonable likelihood that the minor child would be harmed if he was returned to respondent's home. She also found that it was in the minor child's best interests to terminate respondent's parental rights because she found that respondent had sexually abused the unrelated minor and that the minor child was in risk of future harm from respondent. The referee considered the fact that the minor child was placed with mother, however, she still found that it was in minor child's best interests to terminate respondent's parental rights.

On October 4, 2016, the trial court entered its order taking jurisdiction over the minor child, and terminating respondent's parental rights to the minor child, as it found that statutory grounds existed for termination, and that termination was in the best interests of the minor child. This appeal then ensued.

## II. ANALYSIS

Respondent first argues that the trial court erred when it admitted Brohl's testimony in lieu of the unrelated minor's testimony about the abuse after petitioner filed the tender-years motion under MCR 3.972(C)(2). "This Court reviews the trial court's decision to admit or exclude evidence for an abuse of discretion." *In re Archer*, 277 Mich App 71, 77; 744 NW2d 1 (2007). However, whether evidence is admissible under the rules of evidence, the court rules, or a statutory provision involves a question of law that we review de novo. *People v Lane*, 308 Mich App 38, 52; 862 NW2d 446 (2014).

The trial court did not abuse its discretion when it admitted the statements the unrelated minor made to Brohl during her forensic interview. By court rule, MCR 3.972(C)(2) authorizes a trial court to admit the testimony of a person who heard "any statement made by a child under 10 years of age" with regard to "an act of child abuse, child neglect, sexual abuse, or sexual exploitation," and the trial court may admit that testimony without regard to whether the child is available to testify. Prior to admitting the testimony of the person who heard the child's statement, the trial court must conduct an evidentiary hearing to determine whether "the circumstances surrounding the giving of the statement provide adequate indicia of trustworthiness." MCR 3.972(C)(2)(a). The fact that the statement was made by the child during a properly conducted forensic interview indicates trustworthiness. *Archer*, 277 Mich App at 82. A determination that a statement is trustworthy "depends on the totality of the circumstances surrounding the making of the statement." *Id*. "Circumstances indicating the reliability of a hearsay statement may include spontaneity, consistent repetition, the mental state of the declarant, use of terminology unexpected of a child of a similar age, and lack of motive to fabricate." *Id*. Additionally, the trial court may view a recording of the child's statements during the evidentiary hearing to determine the trustworthiness of the child's statements. *Id*. at 83.

The circumstances surrounding the unrelated minor's statements provided adequate indicia of trustworthiness. Brohl, who conducted the forensic interview, was a certified forensic interviewer who had conducted over 1,000 forensic interviews. Brohl explained how she followed eight phases of the forensic interview protocol, the method she used to determine whether a child knew the difference between the truth and a lie, and how she first asks a child to provide her with an unrelated free narrative before turning to the central issue of the forensic interview. Additionally, pursuant to MCR 3.972(C)(2), Brohl interviewed the unrelated minor when she was under 10 years of age.

The unrelated minor consistently described the sexual abuse during her interview with Brohl. Brohl provided extensive testimony about the unrelated minor's statements concerning how respondent had touched her "period," how the unrelated minor "was naked" when respondent was "laying [sic] on top of her and that he had took [sic] all his fingers and put it on her period spot" and then how respondent "stuck two fingers into her period." The unrelated minor also told Brohl about how respondent had "pulled his pants down with underwear and that his period goes on the outside and hers go [sic] on the inside." Brohl testified that the unrelated minor was "pretty descriptive" about things "that it would be hard for a six-year-old to know about unless somebody coached her to say that or had actually done it to her." And ultimately, during the evidentiary hearing the referee viewed the recording of Brohl's interview of the unrelated minor, and she had the opportunity to evaluate the trustworthiness of the unrelated minor's statements.

On appeal, respondent contends that the circumstances surrounding the unrelated minor's statements lack adequate indicia of trustworthiness. Respondent notes that the unrelated minor acted out during the interview by running around the room and jumping on furniture, and that the unrelated minor repeatedly denied that any sexual abuse occurred because she indicated during the interview that the she was describing a dream. Brohl confirmed that the unrelated minor stated that maybe she was dreaming about the incident; however, Brohl also testified that this was common in situations where "children are told not to tell these things for specific reasons of people getting in trouble." Further, Brohl confirmed that she believed the unrelated minor was engaging in that behavior on the day of their interview. During the interview, the unrelated minor explained that she did not tell anyone about the incident, except for LTP, because the unrelated minor feared no one would believe her and "that people would maybe want to kill her because of it." Notably, after the unrelated minor mentioned that respondent would go to jail if anyone found out, Brohl asked the unrelated minor how she knew that respondent would go to jail, and the unrelated minor replied by telling Brohl that she had informed LTP about what had happened with respondent. Thus, if the abuse did not occur, the unrelated minor expressed knowledge of potential adverse consequences for respondent if she disclosed the abuse, and she also expressed a fear of dire repercussions for discussing the abuse with other people.

While the unrelated minor initially claimed that the incident may have been a dream, as the interview progressed the unrelated minor provided more details about the incident. After the unrelated minor told Brohl about the incident, the unrelated minor made a gesture that consisted of her "spread[ing] her legs open and [she] started taking a finger and inserting it into her, over her clothes." When ruling on the tender-years motion, the referee noted that "the Court is also faced with the fact that usually young children don't make up allegations like this and it would be hard to coach a child at this age even if she was told to say it didn't happen, it was difficult for her to keep up with that it didn't happen because she went back and forth." Therefore, the referee properly considered the unrelated minor's initial denials that the abuse occurred, and that she properly concluded based on the totality of the circumstances surrounding her statements there was an adequate indicia of trustworthiness. The trial court did not err in admitting Brohl's statements in lieu of the unrelated minor's testimony.

Next, respondent argues that the trial court erred when it found clear and convincing evidence to terminate his parental rights pursuant to MCL 712A.19b(3)(g) and MCL 712A.19b(3)(j). "This Court reviews for clear error a trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A finding is clearly erroneous if the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Gonzales/Martinez*, 310 Mich App 426, 430-431; 871 NW2d 868 (2015) (quotation marks omitted).

Petitioner has the "burden to establish by clear and convincing evidence the existence of a ground for termination." *Id*. at 431. "To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013).

A trial court may terminate parental rights under MCL 712A.19b(3)(g) if it finds, by clear and convincing evidence, that "[t]he parent, without regard to intent, fails to provide proper care

-4-

or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." MCL 712A.19b(3)(g). Termination under MCL 712A.19b(3)(g) is permissible when evidence establishes that a respondent either caused intentional injuries to a minor child or when a respondent fails to safeguard a minor child from injury. See *In re VanDalen*, 293 Mich App 120, 141; 809 NW2d 412 (2011). Additionally, a trial court may rely on the doctrine of anticipatory neglect, which recognizes that "[h]ow a parent treats one child is certainly probative of how that parent may treat other children." *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001) (quotation marks omitted).

The trial court did not err when it found that clear and convincing evidence established that respondent failed to provide proper care or custody for the minor child when respondent sexually abused the unrelated minor. Petitioner presented clear and convincing evidence that respondent sexually abused the unrelated minor. Brohl testified that the unrelated minor made statements concerning how respondent had touched her "period," how the unrelated minor "was naked" when respondent was "laying on top of her and that he had took all his fingers and put it on her period spot" and then how respondent "stuck two fingers into her period." The unrelated minor stated that respondent had "pulled his pants down with underwear and that his period goes on the outside and hers go [sic] on the inside." And after the unrelated minor disclosed the details of the incident, she made a gesture that consisted of her "spread[ing] her legs open and [she] started taking a finger and inserting it into her, over her clothes." Additionally, the minor child may have been in respondent's home at the time the incident occurred because the unrelated minor stated that respondent shut her bedroom door so the minor child "couldn't hear what daddy, [respondent], was doing or he would go to jail." On this record, the trial court did not clearly err in finding grounds for termination under MCL 712A.19b(3)(g). Given that there was at least one statutory ground for termination, we need not consider the additional grounds upon which the trial court based its decision. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

Respondent appears to contend that petitioner failed to provide services for the purpose of reunifying the minor child and respondent when petitioner moved to terminate respondent's parental rights at the initial dispositional hearing pursuant to MCR 3.977(E). However, under MCR 3.977(E), the trial court "shall order that additional efforts for reunification of the child with the respondent shall not be made, if" the trial court assumes jurisdiction over the minor child, finds facts that establish statutory grounds for terminating on the basis of clear and convincing legally admissible evidence, and that termination of parental rights is in the minor child's best interests. Therefore, under MCR 3.977(E), in this case, the trial court was not required to order petitioner to undertake efforts to reunify the minor child and respondent.

Finally, respondent argues that the trial court erred by finding it to be in the minor child's best interests to terminate respondent's parental rights. "Even if the trial court finds that the Department has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *Gonzales/Martinez*, 310 Mich App at 434. We review for clear error a trial court's "determination regarding the children's best interests." *White*, 303 Mich App at 713.

The trial court terminated respondent's parental rights after finding that the minor child would be placed in harm if he was in respondent's custody and care. The trial court found that respondent sexually abused the unrelated minor. It considered the minor child's placement with mother, and it found that mother would protect the minor child from any future harm or danger. The evidence petitioner presented supported the trial court's findings and best-interest determination. Respondent sexually abused the unrelated minor, and this may have occurred while the minor child was present in respondent's home. The trial court focused on the minor child's best interests, as he would be at risk of long-term neglect due to respondent's sexual assault of a child. On this record, the trial court did not clearly err in finding that termination was in the minor child's best interests. *White*, 303 Mich App at 713.

Affirmed.

/s/ Michael J. Talbot
/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello

-6-