*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re A. G. GREATHOUSE, Minor.

UNPUBLISHED
October 19, 2023

No. 365172
Wayne Circuit Court
Family Division
LC No. 2017-001657-NA

Before: K. F. KELLY, P.J., and JANSEN and CAMERON, JJ.

PER CURIAM.

Respondent-mother appeals as by right the trial court's order terminating her parental rights to her minor child, AGG.[1] Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This matter began when petitioner, the Department of Health and Human Services ("Department"), filed a petition alleging that respondent, who was 16-years-old at the time, was a temporary court ward and unable to properly care for AGG. The Department also alleged respondent, who was a victim of human trafficking and placed in an inpatient facility, had a history of mental health concerns. After a preliminary hearing on September 20, 2017, the trial court authorized the petition and respondent was granted supervised parenting time.

After respondent admitted to allegations in the petition, the trial court exercised jurisdiction and ordered reasonable efforts toward reunification be made. At the initial dispositional hearing, respondent was ordered to comply with her case service plan, which required her to submit to psychological and psychiatric assessments and to comply with and benefit from mental health therapy, educational services, and infant mental health services. Respondent was also ordered to obtain and maintain suitable housing and a legal source of income, attend parenting time and court hearings, and maintain contact with the Department's caseworker. Respondent made progress, and AGG was returned to her care for a period of time. However, after respondent engaged in

---

[1] AGG's legal father voluntarily relinquished his parental rights under the Michigan Adoption Code, MCL 710.21 *et seq.*, and is not a party to this appeal.

abusive behavior and demonstrated concerning mental health issues, AGG was removed from her care and placed in nonrelative foster care. Respondent also demonstrated criminality, anger management issues, and tested positive for substances. At this time, AGG began to demonstrate mental health and behavioral issues as well.

In August 2020, the Department filed a supplemental petition for termination. The termination hearing, which was bifurcated, was delayed for several reasons, including the COVID-19 pandemic and respondent's inability to be present for the hearing because she was incarcerated. The trial court ultimately found grounds for termination were established under MCL 712A.19b(3)(a)(*ii*) (desertion for more than 91 days without seeking custody), (c)(*i*) (conditions which led to adjudication continue to exist and are unlikely to be rectified within reasonable time), (g) (failure to provide proper care or custody and no reasonable expectation of such care or custody within reasonable time), and (j) (reasonable likelihood that child will be harmed if returned to parent). The trial court also found termination of respondent's parental rights was in AGG's best interests. This appeal followed.

## II. STANDARDS OF REVIEW

"We review for clear error the trial court's finding that there are statutory grounds for termination of a respondent's parental rights." *In re Atchley*, 341 Mich App 332, 343; 990 NW2d 685 (2022). We also review a trial court's best-interest determination for clear error. *In re White*, 303 Mich App 701, 7103; 846 NW2d 61 (2014). "The clear-error standard requires us to give deference to the lower court and find clear error only if we are nevertheless left with the definite and firm conviction that a mistake has been made." *SP v BEK*, 339 Mich App 171, 176; 981 NW2d 500 (2021).

## III. STATUTORY GROUNDS

Respondent argues the trial court clearly erred by finding statutory grounds to terminate her parental rights. We disagree.

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020). Under MCL 712A.19b(3)(c)(*i*), grounds for termination exist if at least 182 days have passed between the initial dispositional order and the order terminating respondent's parental rights and "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." *In re White*, 303 Mich App at 710. A parent's failure to resolve issues concerning substance use, as well as a parent's continued inability to provide adequate housing and financial support for a minor child, constitutes clear and convincing evidence that termination is appropriate under MCL 712A.19b(3)(c)(*i*). *In re Frey*, 297 Mich App 242, 244-245; 824 NW2d 569 (2012). A parent's repeated positive or missed drug screenings, as well as lack of engagement with substance use counseling services, also demonstrates that termination of parental rights may be warranted under MCL 712A.19b(3)(c)(*i*). See *In re Atchley*, 341 Mich App 344-346. Moreover, termination may be proper under (c)(*i*) where "the totality of the evidence amply support[ed] that [the respondent] had not accomplished any meaningful change in the conditions" that led to adjudication. See *In re Williams*, 286 Mich

-2-

App 253, 272; 779 NW2d 286 (2009). " 'If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made.' " *In re VanDalen*, 293 Mich App at 139, quoting MCL 712A.19b(5).

In this case, at the time of termination, 182 or more days had elapsed since the issuance of the initial dispositional order. See MCL 712A.19b(3)(c). Furthermore, the record establishes respondent had not accomplished any meaningful change in the conditions that led to adjudication, i.e., her inability or unwillingness to properly care for AGG. Respondent was often without legal income or suitable, stable housing during the proceedings. At the time of the adjudicatory hearing, it was unknown if respondent had housing or legal income because she did not appear at the hearing despite being provided with notice and being free from incarceration.

Additionally, respondent continued to demonstrate anger management and mental health issues, which demonstrated she had not benefited from mental health treatment. She also failed to complete substance abuse treatment, tested positive for substances 17 times, and failed to submit to 108 drug screenings. See *In re Atchley*, 341 Mich App 344-346. AGG had not been in respondent's care since May 2018, and respondent failed to consistently attend parenting times, leading to AGG not recognizing respondent. As of March 10, 2022, respondent had not seen AGG for 93 days because of her failure to timely confirm her attendance with the caseworker beforehand. In sum, "the totality of the evidence amply" supports respondent "had not accomplished any meaningful change" in the conditions that led to adjudication. See *In re Williams*, 286 Mich App at 272.

The record also supported the finding that respondent would not be able to rectify her issues within a reasonable time considering AGG's age. See MCL 712A.19b(3)(c)(*i*). At the time the trial court found statutory grounds for termination, AGG was five years old and had been out of respondent's care for virtually his entire life. Respondent blamed others for AGG being in the Department's custody and demonstrated an unwillingness to cooperate with caseworkers. However, AGG needed permanency and could not wait an indefinite amount of time for respondent to improve. See, e.g., *In re Dahms*, 187 Mich App 644, 647-648; 468 NW2d 315 (1991) (stating that because the Legislature did not intend for children to be left in foster care indefinitely, it is proper to focus on how long it will take a respondent to improve and on how long the involved children can wait). Thus, the record supported the trial court's conclusion that the conditions that led to adjudication continued to exist, and there was no reasonable likelihood respondent would rectify it within a reasonable time. See MCL 712A.19b(3)(c)(*i*).[2]

## IV. BEST INTERESTS

---

[2] Because termination was proper under MCL 712A.19b(3)(c)(*i*), we need not consider the additional grounds upon which the trial court based its decision. See *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

Respondent next argues the trial court clearly erred by finding termination of her parental rights was in AGG's best interests. We disagree.

"Even if the trial court finds that the Department has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). "The trial court must order the parent's rights terminated if the Department has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the child[]'s best interests." *In re White*, 303 Mich App at 713. "The trial court should weigh all the evidence available to determine the child[]'s best interests." *Id*. The focus is on the child—not the parent—when reviewing best interests. *In re Atchley*, 341 Mich App at 346. When determining best interests,

> the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (quotation marks and citations omitted).]

While the evidence demonstrated that AGG and respondent were bonded at times during the proceedings, at the time of termination, AGG did not recognize respondent. Indeed, AGG was out of respondent's care for a majority of his young life. Additionally, respondent failed to address her issues during the lengthy proceedings and was unable or unwilling to effectively parent AGG despite being offered extensive services. At the time of termination, respondent was also unable to provide long-term stability and permanency for AGG, which he, like all children, required. Respondent lacked commitment for a majority of the lengthy proceedings and did not participate in the best-interests hearing despite being provided with notice and being free from incarceration.

The record shows that AGG did well in his foster care placement. He was bonded with his foster parents, with whom he had been placed for several years. The foster parents stated they were committed to him, had cared for his extensive special needs, and wanted to adopt him. For his part, AGG stated that he considered his foster mother to be his mother and looked to the foster parents for love, guidance, and comfort. Given this evidence, the trial court did nor clearly err when it found by a preponderance of the evidence that termination of respondent's parental rights was in AGG's best interests.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Kathleen Jansen
/s/ Thomas C. Cameron

-4-