*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLISHED
August 15, 2024

*In re* NEVERS, Minors.

No. 368144
Wayne Circuit Court
Family Division
LC No. 2021-000792-NA

Before: O'BRIEN, P.J., and CAVANAGH and SHAPIRO[*], JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to the minor children, KDN and MAN, under MCL 712A.19b(3)(b)(*i*) (parent's act caused injury or abuse), (b)(*ii*) (parent had opportunity to prevent injury or abuse but failed to do so), (g) (failure to provide proper care or custody), (j) (reasonable likelihood of harm if returned to parent), (k)(*iii*) (parent's abuse of child included battering, torture, or other severe physical abuse), (k)(*iv*) (parent's abuse of child included loss or serious impairment of organ or limb), and (k)(*v*) (parent's abuse of child included life-threatening injury). On appeal, respondent challenges only the trial court's best-interest findings. We affirm.

## I. FACTUAL BACKGROUND

Respondent is the mother of KDN and MAN. Respondent is also the mother of JXN, who died on August 11, 2021; the cause of JXN's death was ultimately determined to be diphenhydramine[1] toxicity. CDN is the biological father of all three children.[2] The trial court acquired jurisdiction over KDN and MAN in September 2021 after the Department of Health and Human Services (DHHS) filed a petition for child protective proceedings when JXN died. At the time of JXN's death, JXN had injuries on his face, back, arms, and legs evidencing physical abuse.

---

[1] Diphenhydramine is the active ingredient in Benadryl.

[2] CDN was a respondent to the petition to terminate parental rights, but is not a party to this appeal.

[*] Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

On the same date, KDN and MAN underwent physical abuse examinations. They were observed to have healed marks, burns, and abrasions on their bodies, and were diagnosed with failure to thrive. The following day, KDN and MAN participated in forensic interviews, in which both children disclosed that CDN beat the children with a broom. At the time of JXN's death, all three children resided with CDN. Respondent admitted to seeing marks on the children previously but believed the marks were attributable to age-appropriate play accidents. At the time the petition was filed, respondent was in a psychiatric hospital after she experienced a mental health episode while KDN and MAN were in her care. On the same date the petition was filed, the trial court entered an order taking the children into protective custody and placing the children with the DHHS for care and supervision.

The DHHS subsequently filed an amended petition seeking to terminate respondent's parental rights to the children under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), (j), (k)(*iii*), (k)(*iv*), and (k)(*v*). In addition to the allegations set forth in the initial petition, the amended petition alleged that respondent was arrested in August 2021 and petitioned to inpatient mental health treatment after she was observed having a mental health episode at a mall. KDN and MAN were present when the episode occurred. Respondent reported to Child Protective Services (CPS) that she was diagnosed with schizophrenia in 2017, but was no longer receiving treatment because she did not believe she was still schizophrenic. The amended petition alleged that respondent could not provide the children with proper care and custody because of her mental health and lack of suitable housing. The amended petition further alleged that respondent failed to provide adequate food, clothing, shelter, or medical care for the children despite being financially able to do so, and respondent either caused the children's injuries or failed to protect the children from physical abuse. Following a preliminary hearing, the trial court found probable cause that one or more of the allegations in the petitions were true, and that reasonable efforts to prevent or eliminate the children's removal from respondent's care were not required because of aggravated circumstances, i.e., the killing of a sibling and failure to protect. The trial court found that the permanency planning goal of adoption was appropriate and authorized the petition.

At an adjudication hearing, respondent pleaded no contest as to jurisdiction and the statutory grounds for termination. To establish the factual basis for the plea, respondent stipulated that KDN and MAN disclosed physical abuse by CDN and respondent was aware of the children's injuries, but respondent failed to act. Relying on respondent's no-contest plea, the trial court entered an order finding statutory grounds to exercise jurisdiction over the children and statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), (j), (k)(*iii*), (k)(*iv*), and (k)(*v*).

Subsequently, a best-interests hearing was held. After the presentation of evidence and closing arguments, the trial court found that termination of respondent's parental rights was in the children's best interests. The trial court articulated the factors it considered in making its determination, including respondent's mental health, the children's bond with respondent, and respondent's admission that she saw injuries on the children but failed to act. The trial court thereafter entered an order terminating respondent's parental rights. Respondent now appeals.

## II. ANALYSIS

Respondent first argues that the trial court erred by finding termination was in the best interests of the children because the trial court failed to properly consider the children's best interests. We disagree.

Even if a trial court finds that statutory grounds for termination are established by clear and convincing evidence, "it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). This Court reviews a trial court's determination regarding the children's best interests for clear error. *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021). A trial court's finding is clearly erroneous "if although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been made." *In re Olive/Metts*, 297 Mich App 35, 41; 823 NW2d 144 (2012) (quotation marks, alteration, and citation omitted). This Court defers to the trial court's " 'special opportunity . . . to judge the credibility of the witnesses who appeared before it.' " *In re MJC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 365616); slip op at 9, quoting MCR 2.613(C).

With respect to the termination of parental rights, "[t]he focus at the best-interest stage has always been on the child, not the parent." *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022) (quotation marks and citation omitted). A trial court making a best-interests determination

> should weigh all evidence available to it, considering a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, the advantages of the foster home over the parent's home, the length of time the child was in care, the likelihood that the child could be returned to the parent's home in the foreseeable future, and the parent's compliance with the case service plan. [*In re Lombard*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367714); slip op at 5-6.]

A trial court may also consider a parent's history of mental health issues in determining the children's best interests. *In re AH*, 245 Mich App 77, 89; 627 NW2d 33 (2001). Further, "[t]he trial court's findings need not be extensive; 'brief, definite, and pertinent findings and conclusions on contested matters are sufficient.' " *In re MJC*, ___ Mich App at ___; slip op at 10, quoting MCR 3.977(I)(1).

As an initial matter, respondent does not articulate how the trial court failed to properly consider the best interests of the children. In determining the children's best interests, the trial court considered respondent's mental health and found that respondent had a history of mental health issues and was opposed to taking medication. The trial court considered that CDN physically abused the children, and respondent was aware of the children's injuries but failed to act. The trial court considered the children's bond with respondent and found that, although there was a bond, termination of respondent's parental rights was in the children's best interests. Respondent does not challenge the trial court's findings as to the factors it considered, nor does respondent argue that the factors considered by the trial court were inappropriate or impermissible. Rather, respondent sets forth numerous factual assertions and a conclusory argument that "[t]he

trial court errs [sic] in determination [sic] that it is in the best interest of [KDN] and [MAN]" to terminate respondent's parental rights. We thus infer respondent argues that the trial court clearly erred by finding termination was in the children's best interests because the trial court failed to consider all of the evidence when making its best-interest determination.

Respondent has not established that the trial court clearly erred by finding termination was in the children's best interests. Respondent argues that the trial court failed to consider evidence relevant to the children's best interests, including evidence that: (1) respondent admitted to the allegations contained in the petition; (2) respondent had nothing to do with JXN's death; (3) respondent had an apartment; (4) respondent regularly visited with the children and the visits went well; (5) the children want to maintain contact with respondent; (6) Kimberly Lewis, who conducted respondent's clinical best-interests evaluation, and the lawyer-guardian ad litem were both opposed to termination; and (7) the children's needs were not being met in their preadoptive placement "due to behavioral and developmental issues." It is true that a trial court should consider all available evidence in determining a child's best interests. *In re Lombard*, ___ Mich App at ___; slip op at 5. But respondent provides no authority holding that a trial court is required to make explicit findings as to all relevant evidence when making a best-interests determination; rather, under MCR 3.977(I)(1), "brief, definite, and pertinent findings and conclusions on contested matters are sufficient." *In re MJC*, ___ Mich App at ___; slip op at 10 (quotation marks and citation omitted). Accordingly, respondent has not demonstrated that the trial court's failure to make explicit findings as to this evidence renders the trial court's best-interests determination clearly erroneous.

Moreover, not all of respondent's factual assertions are supported by the record. At the best-interests hearing, case worker Claire Maciolek testified that respondent had an apartment in Detroit, but noted that it was a studio apartment that contained one mattress and nothing child-related, and was not suitable for an adult and two young children. Maciolek also testified that respondent's behavior during her most recent visits with the children was appropriate, but no evidence was offered demonstrating the regularity or quality of the visits. And Maciolek testified that respondent refused to take medication or attend therapy for her mental illness, was unemployed, and had no reported source of income. The lawyer-guardian ad litem did argue that the children wanted a relationship with respondent and that she, as well as Lewis, opposed termination of respondent's parental rights. Although the trial court did not make explicit findings concerning these precise matters, these arguments were raised before the trial court made its determination and the trial court concluded that termination of respondent's parental rights was in the children's best interests.

With respect to respondent's assertion regarding the suitability of the children's preadoptive placement, it is true that Maciolek testified that the children's placement was meeting the children's needs at the time of the children's placement, but was struggling to meet their needs at the time of the best-interests hearing because of behavioral issues exhibited by MAN. Maciolek noted, however, that the children's foster parent mentioned a potential change in placement as a "worst case scenario." Despite this evidence, the trial court determined that termination of respondent's parental rights was in the children's best interests. Considering the record in this case, and that respondent does not challenge the trial court's findings as to the factors it explicitly considered, we are not left with the definite and firm conviction that the trial court made a mistake.

Respondent, therefore, has failed to establish that the trial court clearly erred by determining that termination of her parental rights was in the children's best interests.

Respondent next argues that the trial court's best-interests determination was constitutionally improper because the trial court failed to consider means less restrictive than termination before terminating respondent's parental rights. We disagree.

"The government may not infringe a fundamental liberty interest unless the infringement is narrowly tailored to serve a compelling state interest." *In re B & J*, 279 Mich App 12, 22-23; 756 NW2d 234 (2008). Parents have a fundamental right to make decisions concerning the care, custody, and control of their children. *In re Sanders*, 495 Mich 394, 409; 852 NW2d 524 (2014). But this right is not absolute, and the state has a "legitimate interest in protecting the moral, emotional, mental, and physical welfare of the minor," and in certain circumstances "neglectful parents may be separated from their children." *Id*. at 409-410 (quotation marks and citation omitted). Parents have a right to an adjudication before being deprived of the right to direct the care, custody, and control of their children. *Id*. at 418-419. However, "[o]nce the petitioner has presented clear and convincing evidence that persuades the court that at least one ground for termination is established . . . the liberty interest of the parent no longer includes the right to custody and control of the children." *In re Trejo*, 462 Mich 341, 355; 612 NW2d 407 (2000).

In this case, respondent pleaded no contest to the statutory grounds for termination, and the trial court found statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), (j), (k)(*iii*), (k)(*iv*), and (k)(*v*). Accordingly, at the time of the best-interests hearing, respondent's liberty interest no longer included the right to custody and control of her children. Respondent has not presented any authority to support her assertion that the trial court was required to consider means less restrictive than termination when respondent no longer possessed a fundamental liberty interest in the custody and control of her children. Respondent, therefore, has failed to establish that the trial court's best-interests determination was constitutionally improper or that the failure to consider less restrictive means than termination renders the trial court's best-interests determination clearly erroneous.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Mark J. Cavanagh
/s/ Douglas B. Shapiro