*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* CRANE/HINRICHS, Minors.

UNPUBLISHED
December 09, 2025
9:44 AM

No. 369817
Wayne Circuit Court
Family Division
LC No. 2021-000766-NA

Before: YATES, P.J., and BOONSTRA and YOUNG, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating her parental rights to AGC and ALH under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist without reasonable likelihood of rectification), (g) (parent fails to provide proper care and custody despite financial ability to do so), and (j) (reasonable likelihood that the children will be harmed if returned to parent's care).[1] Respondent argues on appeal that her parental rights should not have been terminated because petitioner, the Department of Health and Human Services (DHHS), did not make reasonable efforts to reunite her with her children, there was insufficient evidence of statutory grounds for termination, and termination was not in the children's best interests. We affirm.

This case arises out of respondent's substance abuse, domestic violence, and improper supervision of AGC (born September 2011) and ALH (born May 2020). Respondent assaulted her mother and sister in November 2020, leading to respondent's hospitalization for alcohol abuse and mental health treatment. Also around this time, then nine-year-old AGC began smoking marijuana. After being released from the hospital in January 2021, respondent was found unresponsive by police with an empty bottle of alcohol near her. Respondent has epilepsy, so she potentially had a seizure. DHHS implemented programming and services for respondent and her children, which required therapy, parenting classes, a psychological evaluation, a substance abuse

---

[1] The parental rights of the children's fathers were previously terminated and there are no current appeals.

evaluation, stable income and housing, and random drug screens. A petition to remove AGC and ALH from respondent's care was filed following an incident on July 4, 2021—while heavily intoxicated, respondent again assaulted her sister, who was holding ALH. ALH was struck but not injured. DHHS recommended the children be removed from respondent's care because of her history of domestic violence, substance abuse, and improper supervision.

The case against respondent continued for approximately two years. Respondent attended her parenting times and drug screens sporadically. She never advanced to unsupervised parenting time because she was unable to comply with her treatment plan and have four consecutive clean drug screens. Respondent also appeared to be living with ALH's father, which was against the recommendation of the foster care agency. The police were contacted approximately 20 times for instances of domestic violence between respondent and ALH's father from August 2022 to December 2023. In June 2023, DHHS's permanency plan changed from reunification to adoption. After a termination hearing held on December 11, 2023, and January 22, 2024, wherein DHHS representatives testified respondent's substance abuse and domestic violence issues had not been rectified, the trial court terminated respondent's parental rights. This appeal followed.

## I. DHHS MADE REASONABLE EFFORTS TO REUNIFY RESPONDENT WITH HER CHILDREN

Respondent argues that termination of her parental rights was not appropriate because reasonable efforts were not made to reunify her with her children. We disagree.

To begin, respondent never objected to the services offered to her. Therefore, the issue of reasonable efforts is not preserved for appellate review. *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012) (to preserve an argument regarding reasonable efforts at reunification, a respondent must object to the services when they are offered). An unpreserved claim of error in a termination case is reviewed for plain error affecting substantial rights. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). An obvious error must have occurred which prejudiced the outcome of the proceedings. *Id*. at 9. It must have "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings . . . ." *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019) (cleaned up; alteration in original). The party arguing that plain error occurred bears the burden of persuasion in demonstrating prejudice. *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 704 (2020).

Reasonable efforts were made to reunify respondent with AGC and ALH. The petitioner "must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Hicks/Brown*, 500 Mich 79, 85-86; 893 NW2d 637 (2017). Here, DHHS provided respondent with a service plan on November 17, 2021, which required therapy, parenting classes, a psychological evaluation, a substance abuse evaluation, stable income and housing, and random drug screens. DHHS also made reasonable accommodations to its practices to avoid discrimination on the basis of respondent's mental health challenges. *In re Sanborn*, 337 Mich App 252, 263; 976 NW2d 44 (2021). Respondent's plan was updated to require respondent to remain in contact with DHHS, attend parenting classes and court hearings, attend a substance abuse assessment and therapy, participate in random drug screens and therapy, take an anger management course, maintain suitable housing and a source of income, refrain from committing any crimes, undergo a

psychological assessment, and take any prescribed medications. While DHHS must provide services supporting reunification, the respondent also has the responsibility to participate in and benefit from the offered services. *Frey*, 297 Mich App at 248.

Respondent argued that she substantially complied with this service plan. She participated in therapy, anger management and parenting classes, two psychological evaluations, substance abuse treatment, and had stable housing. However, she missed approximately half of her random drug screens, tested positive for methamphetamines and alcohol, missed several court hearings, and did not consistently take her prescribed medications.

Respondent's service plan was created to address substance abuse, inappropriate supervision, and domestic violence. Her failure to consistently drug test or benefit from substance abuse treatment meant that the issue of substance abuse was left mostly unaddressed. Respondent took medication for attention deficit hyperactivity disorder (ADHD), anxiety, and epilepsy. It is unclear from the record which medications she took inconsistently. Missing random doses of any prescription medication would likely have adverse effects, which could impede respondent's ability to care for her children. Regardless of which medications respondent was taking inconsistently, there were negative side effects that could impact her ability to supervise her children.

Additionally, and perhaps as a result of her absences from court hearings and treatment, respondent was not able to show that she benefited from the ordered services in which she did participate. *Frey*, 297 Mich App at 248. Although respondent participated in therapy, anger management, and parenting courses, she had not improved her ability to parent. She was not able to provide boundaries and structure for AGC. She was unable to properly respond to ALH's tantrums and did not know how to redirect ALH when needed. Respondent would miss multiple visits with her children in a row, and AGC expressed that she did not want to see respondent several times. The trial court did not plainly err in finding that petitioner made reasonable efforts to reunite respondent and her children. *Utrera*, 281 Mich App at 8.

Respondent also argues that DHHS erred by failing to make reasonable accommodations to respondent's service plan. On appeal, respondent makes vague arguments about needing "extra assistance" because of her mental health. She does not explain what this extra assistance would include, only that she was not given the needed resources. Respondent's failure to identify any additional services or modifications means that she cannot argue that they would have led to a better outcome. *Sanborn*, 337 Mich App at 264. The only barrier respondent identified in the lower court to accessing services was her epilepsy, which impacted her ability to drive. DHHS reasonably modified its services by moving drug screens and parenting time to respondent's house and offering respondent bus passes and Uber gift cards. *Hicks/Brown*, 500 Mich at 86. Respondent still failed to attend all of her drug screens or parenting times. She has not demonstrated that she was prejudiced by the provided services or an alleged failure to provide reasonable accommodations. *Pederson*, 331 Mich App at 463. The trial court did not plainly err in finding that reasonable efforts were made to prevent termination because DHHS provided reasonable modifications to respondent and she still did not fully comply with her service plan. *Utrera*, 281 Mich App at 9.

## II. CLEAR AND CONVINCING EVIDENCE SUPPORTED THE TRIAL COURT'S DECISION TO TERMINATE RESPONDENT'S PARENTAL RIGHTS

Respondent argues that statutory grounds to terminate her parental rights should not have been found because she was in the process of complying with her service plan. We disagree.

Statutory grounds must be found by clear and convincing evidence. *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). The trial court may terminate a respondent's parental rights if more than 182 days have passed since the initial dispositional order, the conditions leading to the adjudication continue to exist, and there is no reasonable likelihood that the conditions will be remedied in a reasonable amount of time. MCL 712A.19b(3)(c)(*i*). It is agreed that, at the time of termination, more than 182 days passed since the initial order of disposition was entered in this case. MCL 712A.19b(3)(c)(*i*).

The question is whether the conditions that brought the children under DHHS supervision continued to exist. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). A failure to benefit from a service plan additionally supports termination under MCL 712A.19b(3)(c)(*i*). *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014). The trial court's holding that conditions continued to exist is supported by factual findings that are not clearly erroneous. *Id*. at 709, 713. Respondent had over two years to remedy the conditions that led to adjudication: inappropriate supervision, substance abuse, and domestic violence. The evidence presented in the trial court supported a finding that there had not been a meaningful change in these conditions.

Respondent tested positive for methamphetamines multiple times over the course of the case and missed approximately half of her drug screens, each of which is considered a positive screen. She claimed that she did not use drugs beyond alcohol and nicotine despite testing positive for methamphetamines. Her explanation for one of her positive screens for methamphetamines was that someone replaced her Adderall with methamphetamine, which suggests, at least, an inability to properly store prescription medication. Substance abuse continued to be an issue for respondent, at least in part because she was not consistently participating in drug screening. *Williams*, 286 Mich App at 272.

At the time of the initial petition, the main concern related to domestic violence was respondent's violence against her family members. Respondent participated in a domestic violence prevention course. However, new concerns regarding domestic violence between respondent and ALH's father arose. The police were called over 20 times regarding incidents between respondent and ALH's father from August 2022 to December 2023. Although respondent was no longer in contact with ALH's father at the time of termination, this record does not support that there is no further concern for domestic violence. Given that the violence between respondent and ALH's father occurred *after* respondent participated in domestic violence prevention education, it did not appear that respondent benefitted from the course. There is no evidence that domestic violence would not be a concern with future romantic partners and respondent's family because it was unclear that respondent had internalized how to prevent and respond to domestic violence. There was not a meaningful change in the domestic violence that led to the initial adjudication. See *Williams*, 286 Mich App at 272 (reasoning that where a respondent engages in efforts to treat substance abuse addiction but is subsequently unable to stop using drugs, there is no meaningful change in circumstances that led to adjudication).

Finally, improper supervision continued to be a concern. Throughout the pendency of the case, respondent failed to consistently attend her parenting times, had behaved inappropriately in front of her children, and did not pay full attention to ALH, who has special needs. Foster care workers did not think that respondent would be able to appropriately parent AGC or ALH. This suggests that respondent would be unable to properly care for AGC and ALH if they were returned to her custody. As shown by respondent's continuing struggles with substance abuse, improper supervision, and domestic violence, she failed to benefit from her service plan. *White*, 303 Mich App at 710. Respondent's argument on appeal that she would be able to benefit if given more time is unavailing, especially in light of testimony by two foster care workers who stated that respondent would be unable to appropriately parent AGC and ALH even if given more time to comply. Because there had not been meaningful changes in the substance abuse, domestic violence, and improper supervision, the trial court did not clearly err in its factual findings. There was no legal error in holding that statutory grounds existed to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*). *Williams*, 286 Mich App at 272. Because only one statutory ground is needed to terminate a respondent's parental rights, we do not address the other statutory grounds found by the trial court for terminating respondent's rights. *Moss*, 301 Mich App at 80.

### III. TERMINATION WAS IN THE CHILDREN'S BEST INTERESTS

Respondent argues that termination of her parental rights was not in AGC's or ALH's best interests. This Court reviews the trial court's findings that termination is in a child's best interests for clear error. *White*, 303 Mich App at 709. Finding no clear error in the trial court's factual findings regarding AGC and ALH's best interests, we do not disturb the court's decision.

A preponderance of the evidence must support a finding of best interests. *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). The best interests of each child should be considered separately. *In re Olive/Metts*, 297 Mich App 35, 42; 823 NW2d 144 (2012). When determining if termination is in a child's best interests, the trial court may consider the bond between the child and the respondent, the respondent's parenting ability, the child's need for stability and permanency, and the advantages of the child's current placement over their parent's home. *Olive/Metts*, 297 Mich App at 42. The trial court may also consider any history of domestic violence, the respondent's compliance with their service plan, the respondent's visitation history with the child, the child's well-being in their current placement, and the potential for adoption. *White*, 303 Mich App at 714. Placement with a relative weighs against termination. *In re Atchley*, 341 Mich App 332, 347; 990 NW2d 685 (2022).

The trial court appropriately considered the best interests of AGC and ALH separately. *Olive/Metts*, 297 Mich App at 42. Respondent's bond with AGC was more similar to that of a friend than a parent-child relationship. Respondent was unable to enforce the boundaries and structure that AGC needed because of AGC's own prior substance use beginning at age nine, and because she expressed she was afraid of respondent because of respondent's substance abuse. AGC was placed with her paternal grandfather, who was able to provide AGC with that structure. Respondent did not attend all of her parenting times with AGC, and at one point, visits were entirely virtual because respondent had threatened to kill AGC if AGC reunited with AGC's father. Additionally, AGC had expressed that she did not want to see respondent multiple times. AGC was doing well with her grandfather, and a paternal aunt was willing to adopt AGC.

Termination was also in ALH's best interests. Respondent had almost no bond with ALH. Respondent was not able to properly care for ALH because ALH had special needs and respondent struggled to pay full attention to ALH. Because of ALH's special needs and young age, she needed permanency and stability. ALH was placed with her paternal grandmother, who was better able to manage ALH's behavior. As discussed above, respondent struggled with domestic violence, including an incident in which she punched ALH. Respondent visited ALH, but only sporadically. ALH was doing well in her placement, and her grandmother was willing to be her long-term placement.

AGC and ALH were placed with relatives, and the trial court found that "[respondent is] unable to provide permanence, safety, security and nurturance for these children as needed. The homes that—the relative homes are providing that." Although placement with a relative weighs against termination, this was outweighed by respondent's inability to meet the needs of the children. *Atchley*, 341 Mich App at 347 (reasoning "although the child was placed with a relative, the court considered that fact as well and concluded that, given respondent-mother's consistent lack of progress toward reunification—including her ongoing and unrectified substance-abuse issues—termination was nevertheless in the child's best interests"). The trial court did not clearly err in finding that termination of respondent's parental rights was in AGC's and ALH's best interests.

Affirmed.

/s/ Christopher P. Yates
/s/ Mark T. Boonstra
/s/ Adrienne N. Young

-6-